**SIMMONS HANLY CONROY**
Crystal Foley (SBN 224627)
cfoley@simmonsfirm.com
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555

Mitchel M. Breit (*pro hac vice*
forthcoming)
mbreit@simmonsfirm.com
112 Madison Avenue
New York, New York 10016-7416
Phone: (212) 784-6400

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| EDUARDO HERNANDEZ, on behalf of themselves and all others similarly situated, <br> Plaintiff, <br> v. <br><br> JOHNSON & JOHNSON CONSUMER INC., <br><br> Defendant. | Case No.: _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Eduardo Hernandez individually and on behalf of all others similarly situated, brings this action against Defendant Johnson & Johnson Consumer Inc. ("J&J"). The following allegations are based upon personal knowledge as to Plaintiff's own conduct, the investigation of counsel, and upon information and

belief as to the acts of others.

# INTRODUCTION

1. Defendant J&J produces, manufactures, markets, and distributes over-the-counter products to families, children, and other consumers worldwide, including analgesic or pain-relieving medicines under the Tylenol® brand name.

2. In 2005, Tylenol® Extra Strength Rapid Release Gels were introduced to the American public as "specially designed" gelcaps "with holes to allow [for] the release of powerful medicine *even faster than before*."[1]

3. Three years later, Tylenol® PM Rapid Release Gels were launched with the same promises.[2]

4. Since 2005, Defendant J&J has misled and continues to mislead consumers about the nature, quality, and effectiveness of its so-called rapid release Tylenol® products through its marketing and labeling. J&J explicitly promises faster relief than before and goes to great lengths to convince consumers that Tylenol® rapid release gelcaps work faster than other acetaminophen products with marketing statements like:



---

[1]   https://www.tylenol.com/news/about-us (last accessed 11.15.2018) (emphasis added).

[2] *Id.*

[3]   https://www.ebay.com/itm/Tylenol-Extra-Strength-290-Rapid-Release-Liquid-Gels-FAST-SHIPPING-/232796445534 (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

5.      Despite what J&J's marketing and labeling would have consumers believe, the term "rapid release" does not actually mean that the drug works faster for consumers than non-rapid release products.

6.      J&J has long known that traditional, non-rapid release acetaminophen products can be equally effective in the same, if not faster, time period than its Tylenol® rapid release gelcaps.

7.      In fact, a new study demonstrates that Tylenol® rapid release gelcaps dissolve *slower* than J&J's non-rapid release products.[4]

8.      Yet, J&J charges a premium for its rapid release gelcaps.

9.      J&J sells its Tylenol® rapid release gelcaps with false, misleading, deceptive labeling and marketing in an effort to dupe consumers into purchasing these gelcaps for prices that exceed their true value. J&J has pursued and continues to pursue this course of conduct in order to profit off of unassuming, unwitting consumers looking for the fastest pain-relief possible from an over-the-counter acetaminophen product.

10.     Plaintiff and Class Members are consumers who were misled or deceived by J&J's false, misleading, and deceiving representations and as a result purchased the Tylenol® rapid release gelcaps ("Class Rapid Release Gelcaps").

11.     Plaintiff and Class Members would not have purchased the Class Rapid Release Gelcaps had J&J disclosed accurate information about the products and not misled them into believing that the Class Rapid Release Gelcaps would

---

[4] Kucera, Jessop, Alvarez, Gortler, Light, *Rapid and Fast-Release Acetaminophen Gelcaps Dissolve Slower Than Acetaminophen Tablets*, Adv Inv Pha The Medic, 1:63-71 (Nov. 12, 2018) accessible at http://www.kenkyugroup.org/article/8/173/Rapid-and-Fast-Release-Acetaminophen-Gelcaps-Dissolve-Slower-Than-Acetaminophen-Tablets (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

provide faster relief than other, cheaper acetaminophen products, such as the traditional Tylenol® tablets.

12.     Plaintiff, thus, bring this class action against J&J on behalf of himself and on behalf of all individuals who purchased the Class Rapid Release Gelcaps (the "Class") seeking damages and appropriate equitable relief given that J&J's conduct violated well-established contract, tort, and consumer protection laws of California and the United States.

## PARTIES

13.     Plaintiff Eduardo Hernandez is a citizen and resident of Moreno Valley, Riverside County, California.

14.     Defendant Johnson & Johnson Consumer Inc. is an Indiana foreign corporation that maintains its principal place of business at 199 Grandview Road, Skillman, Somerset County, New Jersey 08558. The relevant division of Johnson & Johnson Consumer Inc. is McNeil Consumer Healthcare Division which is located at 7050 Camp Hill Road, Fort Washington, Montgomery County, Pennsylvania 19034.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because at least one member of the proposed class is a citizen of a state different from J&J; the amount in controversy exceeds $5,000,000, exclusive of interests and costs; the proposed class consists of more than 100 members; and none of the exceptions under the subsection apply to this action.

16.     This Court has jurisdiction over J&J because it has sufficient minimum contacts in California and otherwise intentionally avails itself of the markets within

California through the promotion, sale, marketing, and distribution of its products, such that exercise of jurisdiction by this Court is proper and necessary.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because J&J conducts substantial business in this District and a substantial part of Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS
### ACETAMINOPHEN GENERALLY

18.     Acetaminophen, also called paracetamol or N-acetyl-para-aminophenol (APAP), is an over-the-counter pain reliever and fever reducer that comes in a variety of forms: liquid suspension, tablets, capsules, and gelcaps.[5]

19.     In any form, acetaminophen is used to treat a variety of common conditions including headaches, muscle aches, arthritis, backaches, toothaches, colds, fevers, acute pain,[6] chronic pain,[7] etc.

20.     Typically, it is the first treatment recommended for *any* mild to moderate pain.[8] Therefore, acetaminophen is one of the most commonly used drugs in the world when it comes to pain mitigation representing an estimated global market value of over $350 million annually.[9] It is even included on the World Health Organization List of Essential Medicines.[10]

---

[5] *Id.*

[6] https://www.drugs.com/acetaminophen.html (last accessed 11.15.2018).

[7] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.15.2018).

[8] *Id.*

[9] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.4.

[10] WHO. World Health Organization Model List of Essential Medicines. August 2017 ed.   http://www.who.int/medicines/publications/essentialmedicines/en/2017 (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

21.     Given the wide-spread use of acetaminophen, both the *quality* and *value* of acetaminophen products present important public health, consumer safety, and economic concerns.[11]

### J&J AND NAME BRAND ACETAMINOPHIN: TYLENOL®

22.     Tylenol® is the well-recognized and trusted[12] brand name of acetaminophen[13] established by the McNeil family business.

23.     Johnson & Johnson acquired the McNeil family business in 1959 and began selling Tylenol® as an over-the-counter pain reliever in 1961.[14]

24.     In 2018, Johnson & Johnson designated the McNeil branch of the company located in Fort Washington, Pennsylvania the McNeil Consumer Healthcare Division of Johnson & Johnson Consumer Inc., which is Defendant J&J in this action.

25.     Today, J&J is one of the largest consumer health and personal care products companies in the world[15] with Tylenol® as one of its most familiar product lines.

---

[11] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.4.

[12] http://files.shareholder.com/downloads/JNJ/0x0x983007/83783844-0B2D-4A72-BE21-419123F5C7AB/JNJ_News_2018_7_30_News_Releases.pdf (last accessed 11.15.2018).

[13] https://www.mayoclinic.org/chronic-pain-medication-decisions/art-20360371 (last accessed 11.15.2018).

[14] http://www.brandsearch.superbrands.com/wp-admin/admin-ajax.php?juwpfisadmin=false&action=wpfd&task=file.download&wpfd_category_id=1190&wpfd_file_id=80217&token=d3ee8a0c555749f1e9bb1f3427339271&preview=1 (last accessed 11.15.2018).

[15] http://files.shareholder.com/downloads/JNJ/0x0x983007/83783844-0B2D-4A72-BE21-419123F5C7AB/JNJ_News_2018_7_30_News_Releases.pdf (last accessed 11.15.2018).

26.     It is, on information and belief, also one of the world's largest manufacturers and distributors of acetaminophen products with acetaminophen "[a]t the heart of every Tylenol pain reliever."[16]

27.     J&J currently lists 27 Tylenol® products on its Tylenol® website, including: 5 oral suspension products, 6 liquid products, 1 chewable product, 1 tablet product, 1 coated tablet product, 11 caplet products, and 2 gelcap products.[17] All but one of the 27 products contain acetaminophen.[18]

28.     Over the past 60 years, Tylenol® products have had great success. In 1979, Tylenol became the bestselling product in the health and beauty aid category in the United States.[19] As of 2005, adult Tylenol was the "fastest-growing brand in the Internal Analgesics category — making it a bigger brand than Crest, Gillette, Dove, or Listerine."[20] At that time, consumers had purchased Tylenol "in such record numbers that it ha[d] bec[o]me the only pharmaceutical franchise over $1 billion available without a prescription."[21] Last year, Johnson & Johnson's full year sales for all products totaled $76.5 billion.[22] Consumer product sales accounted for

---

[16] http://www.brandsearch.superbrands.com/wp-admin/admin-ajax.php?juwpfisadmin=false&action=wpfd&task=file.download&wpfd_category_id=1190&wpfd_file_id=80217&token=d3ee8a0c555749f1e9bb1f3427339271&preview=1 (last accessed 11.15.2018).

[17] https://www.tylenol.com/products (last accessed 11.15.2018).

[18] *Id*. Tylenol® PM Simply Sleep Nighttime Sleep Aid does not contain acetaminophen.

[19] http://www.brandsearch.superbrands.com/wp-admin/admin-ajax.php?juwpfisadmin=false&action=wpfd&task=file.download&wpfd_category_id=1190&wpfd_file_id=80217&token=d3ee8a0c555749f1e9bb1f3427339271&preview=1 (last accessed 11.15.2018).

[20] *Id*.

[21] *Id*.

[22] https://www.jnj.com/media-center/press-releases/johnson-johnson-reports-2017-fourth-quarter-results (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

$13.6 billion of that total.[23] That number was "negatively impacted by declines in the Baby Care and Oral Care businesses" but that was "mostly offset by growth in over-the-counter products, including TYLENOL® analgesics…."[24]

29.    J&J has profited and continues to profit greatly from the Tylenol® product line.

30.    But J&J's profitability on the Class Rapid Release Gelcaps comes at much too high a price, both figuratively and literally: consumer deception about the true nature, quality, and value of the product.

31.    J&J sells its Class Rapid Release Gelcaps at a higher price than its other equally effective and equally fast-acting acetaminophen products that are not classified as "rapid release."

32.    For example, currently at Walgreens, a regularly priced 100 count bottle of Tylenol® Extra Strength Rapid Release gels costs $11.49, while a regularly priced 100 count bottle of Tylenol® Extra Strength caplets costs $10.49 and a regularly priced 100 count bottle of Tylenol® Regular Strength tablets costs $9.49.[25]

33.    Currently on Amazon, in its prime pantry exclusively for Amazon prime members, a regularly priced 225 count bottle of Tylenol® Extra Strength Rapid Release gels costs $19.49, while a regularly priced 225 count bottle of Tylenol® Extra Strength caplets costs $17.90. A regularly priced 100 count bottle of Tylenol® Extra Strength coated tablets costs $14.97 on Amazon prime.[26]

---

[23] *Id.*

[24] *Id.*

[25] https://www.walgreens.com/search/results.jsp?Ntt=tylenol (last accessed 11.15.2018) (excludes sales prices). Extra Strength coated tablets do not appear on the Walgreens website.

[26] *See* https://www.amazon.com/s/ref=nb_sb_noss_2?url=search-alias%3Daps&field-keywords=tylenol++225&rh=i%3Aaps%2Ck%3Atylenol++225 (last accessed 11.15.2018) (excludes sales prices); *see also* https://www.amazon.com/Tylenol-

CLASS ACTION COMPLAINT

34.     On information and belief, other retailers similarly sell the Class Rapid Release Gelcaps at a price higher than other non-rapid release Tylenol® acetaminophen products.

35.     Consumers have been willing to and continue to pay this premium because, as a result of J&J's false, misleading, unfair, and/or deceptive labeling and other advertising, they believe the Class Rapid Release Gelcaps work faster than other, cheaper acetaminophen products when in fact, they do not.

36.     Other companies have followed J&J's labeling, marketing, advertising, and pricing lead and now, in general, acetaminophen products labeled, advertised, or marketed as "rapid release" or "fast-release" are sold on average at a price 23% higher than those acetaminophen products not making these rapid or fast-release representations.[27]

## THE INTRODUCTION & DECEPTIVE MARKETING OF RAPID RELEASE TYLENOL®

37.     The Tylenol® line of products first expanded to include rapid release gelcaps in 2005 with the introduction of Tylenol® Extra Strength Rapid Release Gels.

38.     J&J specifically identifies the launch of this product as an important date in the company's history by including it on its company About Us website timeline:

---

Strength-Tablets-Acetaminophen-Reducer/dp/B07G3MF7LV/ref=sr_1_7_a_it?ie=UTF8&qid=1541523633&sr=8-7&keywords=extra+strength+tylenol+tablets (last accessed 11.15.2018). Extra Strength coated tablets are unavailable in the prime pantry.
[27] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.4.

CLASS ACTION COMPLAINT



[28]

39.     In doing so, J&J touts on its website that these rapid release gelcaps are "specially designed…to allow the release of powerful medicine *even faster than before*."[29]

40.     J&J also made the same "even faster than before" claim in its advertising[30]:



Tylenol® Extra Strength Rapid Release Gels. New gelcaps with specially designed holes to release powerful medicine even faster than before. Rapid release. Rapid relief.

---

[28] https://www.tylenol.com/news/about-us (last accessed 11.15.2018).

[29] *Id*. (emphasis added).

[30] https://debarchambault.com/Tylenol-Rapid-Release (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

41.    This claim – that these rapid release gelcaps worked even faster than before – became associated with the Tylenol® Extra Strength Rapid Release Gels. In fact, even a brand case study described the gels as "a new form of Tylenol that releases pain medicine even faster than before."[31]

42.    In 2008, Tylenol® PM Rapid Release Gels were introduced to the American public, utilizing the same "rapid release" technology as the Extra Strength Rapid Release Gels and the same or similar advertising. Indeed, the Tylenol website indicates that the PM rapid release gels "relieve your pain fast so you can sleep and feel refreshed after a good night's rest.[32]

43.    In 2009, the rapid release gels were recalled and were not re-released until 2017.[33]

44.    The national return to the market of the rapid release gels represented Tylenol's "biggest product launch in years" and, thus, the marketing campaign "involved triple the investment" that J&J would normally spend.[34]

45.    The marketing campaign encouraged consumers to find "fast working pain relief."[35]

46.    The campaign "included integration with Mountain View, California-based Waze and its crowdsourced traffic and navigation mobile application, as well

---

[31] http://www.brandsearch.superbrands.com/wp-admin/admin-ajax.php?juwpfisadmin=false&action=wpfd&task=file.download&wpfd_category_id=1190&wpfd_file_id=80217&token=d3ee8a0c555749f1e9bb1f3427339271&preview=1 (last accessed 11.15.2018).
[32] https://www.tylenol.com/news/about-us (last accessed 11.15.2018).
[33] https://shoppermarketingmag.com/headache-sufferers-directed-walgreens (last accessed 11.15.2018).
[34] *Id.*
[35] *Id.*

CLASS ACTION COMPLAINT

as moment-based targeting from Aki Technologies, San Francisco," California to drive consumers stuck in rush-hour traffic into stores.[36]

47.    "In the first month, [the campaign] reached over 25 million shoppers on their mobile device across five key markets, resulting in both category and Tylenol share growth at Walgreens."[37]

48.    In stores, the campaign inundated consumers with its messaging, "from displays in-aisle to endcaps to the pharmacy counter to checkout" and even "motion-activated video units."[38]

49.    Customers were also targeted "via Walgreens.com, email blasts, the retailer's Facebook page, a Google campaign, FSIs and paid search."[39]

50.    The campaign's "success was measured largely on brand share and category growth, and it exceeded expectations on these measures."[40]

51.    With its marketing, product labeling, and affirmative representations, J&J sought and continues to seek to further this falsehood: that rapid release Tylenol® actually provides faster relief than other cheaper acetaminophen products.

52.    It did this not only by explicitly making the claim, but also by using buzz words that emphasized the speed, fast-acting nature, and unique laser-drilled holes of the rapid release gelcaps.

53.    For example, J&J advertised the rapid release gelcaps claiming it:

WORKS AT THE
**SPEED OF LIFE**

**Only TYLENOL® Rapid Release Gels**

---

[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*

CLASS ACTION COMPLAINT

HAVE LASER-DRILLED HOLES. THEY RELEASE MEDICINE FAST FOR FAST PAIN RELIEF[41]

54.     Moreover, J&J ran a commercial using car racing drivers emphasizing speed in which the drivers try to figure out why another driver was so fast, only to find out it was allegedly because the driver was using Tylenol® Rapid Release Gels.[42]

55.     Other marketing statements include, but are not limited to, the following:

(a) "Tylenol® Rapid Release Gels start to dissolve in seconds and effectively relieve pain at rapid speed"[43]

(b) "Starts to Dissolve in Seconds and Relieves Pain Fast"



[44]

(c) "Rapid release. Rapid relief."[45]

[41]https://www.ebay.com/itm/Tylenol-Extra-Strength-290-Rapid-Release-Liquid-Gels-FAST-SHIPPING-/232796445534 (last accessed 11.15.2018).
[42] https://www.youtube.com/watch?v=D4cuoC2DgE8 (last accessed 11.15.2018).
[43] https://www.youtube.com/watch?v=_bZcPNyYu1o (last accessed 11.15.2018).
[44] https://www.londondrugs.com/tylenol-extra-strength-rapid-release-gels-acetaminophen---500mg-gelcaps---80s/L9288176.html (last accessed 11.15.2018).
[45]https://cargocollective.com/jeremybernstein/The-Feel-Better-Fast-Show (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

(d) "Only Tylenol® Rapid Release Gels have laser drilled holes. They release medicine fast for fast pain relief. Fast enough to keep up with you, so you can keep up with life."[46]

(e) "Fast Working Pain Relief"



(f) "New Tylenol® Rapid Release Gels. Gelcaps with specially designed holes to release powerful medicine even faster than before."[48]

(g) "When you have pain from a pounding headache and you need relief, trust Tylenol® Rapid Release… Tylenol® Rapid Release Gelcaps dissolve quickly and relieve your headache pain fast."[49]

56.     On information and belief, J&J's marketing and labeling is the same or substantially similar for Tylenol® PM Rapid Release Gels.

---

[46] https://www.youtube.com/watch?v=DzczfGN0NB4 (last accessed 11.15.2018).
[47] https://www.effie.org/case_database/case/SME_2018_E-375-981 (last accessed 11.15.2018).
[48] https://www.youtube.com/watch?v=cKp4xPNTrPY (last accessed 11.15.2018).
[49] https://www.youtube.com/watch?v=LN0GeRuMouk (last accessed 11.15.2018).

CLASS ACTION COMPLAINT

50

57.    J&J's false, misleading, and deceptive marketing campaign has been successful in getting the public to believe that the rapid release gelcaps are faster acting than other Tylenol® products, when in fact they are *slower*.

58.    It was reported that the "rapid release gels differ from other Tylenol products mainly in its delivery mechanism."[51]

59.    Consumer reviews and comments indicate that consumers decide to try and buy the Class Rapid Release Gels because of the represented fast-acting nature of the products. For example, one individual from New York reviewed the product approximately mid-October 2018 and stated that he/she "just decided to try them because they were rapid relief."[52]

60.    Consumers reviews and comments indicate that consumers have been deceived, confused by J&J's representations; are likely to be deceived or confused given J&J's representations; and some even notice after purchase that the Class Rapid Release Gelcaps do not faster than regular, non-rapid release, acetaminophen Tylenol® products that are cheaper. Examples include, but are not limited to the following:

[50] https://www.amazon.com/TYLENOL-RAPID-RELEASE-CONSUMER-SECTOR/dp/B004N14350 (last accessed 11.15.2018).
[51]    https://shoppermarketingmag.com/headache-sufferers-directed-walgreens    (last accessed 11.15.2018).
[52] https://www.tylenol.com/products/tylenol-rapid-release-gels#bv-product-reviews (last accessed 11.15.2018).

CLASS ACTION COMPLAINT



(a)

⭐⭐⭐⭐⭐

**Fast acting relief!**

State: **Arizona**
Age: **25 to 34**

Tylenol Rapid Release Gels is classic Tylenol meets even faster acting results. When you're in pain, you need relief as soon as possible. Give this a shot!

✅ Yes, I'd recommend this product

MelY6

2 months 1 day ago

MelY6 Ratings

Overall: ⭐⭐⭐⭐⭐

53

(b)

⭐⭐⭐⭐☆

**Truely longer lasting**

I have taken many tylenol products in the past and this product was easier to go down due to the coating on the shell. I also noticed that for my back pain they lasted alot longer then traditional tylenol, I also took less over the course of the day which i really have to say is a money saver. Great product started to work in the same amount of time but it lasted so much longer.

✅ Yes, I'd recommend this product

hmm2525 USA

*This review was collected as part of a program with TYLENOL®*

1 year 11 months ago

hmm2525 Ratings

Overall: ⭐⭐⭐⭐☆

54

(c)

⭐⭐⭐⭐⭐

**Not so rapid but works well**

State: **Texas**
Age: **18 to 24**

I typically buy and use this kind but it doesn't start working any faster than any other gellcap or oral medication. It does work though. I get headaches a lot and this helps when you need nothing in a hurry and don't have headache medicine.

✅ Yes, I'd recommend this product

Electropro6

11 months 3 weeks ago

Electropro6 Ratings

Overall: ⭐⭐⭐⭐⭐

55

---

[53] https://www.tylenol.com/products/tylenol-rapid-release-gels (last accessed 11.15.2018).

[54] https://www.tylenol.com/products/tylenol-rapid-release-gels#bv-product-reviews (last accessed 11.15.2018).

[55] *Id.*

CLASS ACTION COMPLAINT

(d)

★★★★☆

**About as good as any other OTC pain pill**

1 year 11 months ago

Julianna89 Ratings

Overall: ★★★★☆

I can't really tell that they work any faster than any other pain relief pill, but they are easy to take capsules and they do provide stong relief. I used them mainly for a toothache and they worked after about 20 minutes to decrease the pain.

✓ Yes, I'd recommend this product

Julianna89 USA

*This review was collected as part of a program with TYLENOL®*

56

(e)

they give you releif faster and they are gels so they disperce the liquid faster!!

Source(s):
i just know!~!

sarah the know it all · 1 decade ago

57

(f)

*Sue says :*

There is no difference between these pills and the regular tylenol. The company is making them that way to rip us off. We pay the extra 2-3 dollars per bottle for the quick release. The other night my husband dropped the bottle on the floor and one broke open. I kept looking for the powder. All this is, is a regular tylenol with a coating over it, so you will think it's a caspule. So you body has to first break down the capsule material, then the tylenol has to break down???? it's twice as long? They're ripping people off right under our noses...

| reply | agree ? | disagree +1 | highlight | hide |

ReviewStream.com

*Joanna says :*
Why should I trust?

Hi Sue,

There actually is a bit of a difference in the coating of the caplets. The rapid release coating dissolves faster thus allowing the tablet itself to dissolve faster. I thought the same thing as you the first time I tried them, but my pharmacist explained the difference to me.

Hope this helps.

Sincerely,

Joanna

| reply | agree +1 | disagree ? | highlight | hide |

ReviewStream.com

58

---

[56] *Id.*

[57] https://answers.yahoo.com/question/index?qid=1006050815308&page=2 (last accessed 11.15.2018).

[58] https://www.reviewstream.com/reviews/?p=46385 (last accessed 11.15.2018).

17

CLASS ACTION COMPLAINT

(g)

★★★★☆

Continued quality for Tylenol

The gel tabs are a good size - no so big they are hard to swallow and not so small they
are easily lost - and the red and blue makes them clearly identifiable. So I could put
several in a small travel pill case in my purse for emergencies or surprise headaches
(when are they not a surprise?) and not be worried about forgetting what it was when I
open the case and having to toss them because I've forgotten what they were. They work
just as good as any other Tylenol or acetaminophen I've taken too.

✓ Yes, I'd recommend this product

Elsie63 USA

*This review was collected as part of a program with TYLENOL®*

1 year 11 months ago

Elsie63 Ratings

Overall: ★★★★☆

59

(h)

★★★★★

Fast and simple

State: **Missouri**
Age: **35 to 44**

These work fast, so you don't have to wait long to have relief from pain. I like these for
headaches the most, because they do work faster than the normal Tylenol.

✓ Yes, I'd recommend this product

Bubbles1

1 year 4 months ago

Bubbles1 Ratings

Overall: ★★★★★

60

(i)

★★☆☆☆

causing nausia and diziness

Why Choose?: **Advertising**
State: **North Carolina**
Gender: **Female**
Age: **45 to 54**

About 15-20 minutes of taking the rapid release gel, I get severely nauseous and dizzy.
the side effects last 2-3 hours. The benefit is not that much better. I can take a regular
500 mg pill and will relieve my pain just the same. This was not a good product for me.
Would not recommend this to anyone. I also developed ringing in my ears.

✗ No, I would not recommend this product

Mimi

1 year 8 months ago

Mimi Ratings

Overall: ★★☆☆☆

61

---

[59] https://www.tylenol.com/products/tylenol-rapid-release-gels#bv-product-reviews
(last accessed 11.15.2018).
[60] *Id.*
[61] https://www.tylenol.com/products/tylenol-rapid-release-gels#bv-product-reviews
(last accessed 11.15.2018).

CLASS ACTION COMPLAINT

(j)

Recently, I have been seeing advertisements on the television for Tylenol Rapid Release Gelcaps. These Gelcaps contain the same ingredient as regular Tylenol, but have a special feature that regular Tylenol does not. Instead of just being a regular tablet, the Tylenol Rapid Release Gelcaps have special "micro-holes" in the coating of the pill. These tiny holes in the Gelcap are supposed to allow the medicine to be released in your stomach faster to presumably offer quicker relief from minor aches and pains like a headache. Tylenol, of course, charges more for the "Rapid Release" version of the drug than they do for their regular pills, so I was a bit skeptical that the "Rapid Release" concept was nothing more than a clever marketing gimmick.

The next time I was at the store, however, I noticed that the Tylenol Rapid Release Gelcaps were part of a buy one get one free sale, so I decided to pick up a bottle and give them a try. The next time I found myself with a headache, I decided to take two of the Rapid Release Tylenol instead of regular acetaminophen like I normally would. Then I waited…and waited….and waited some more. It took about 70 minutes for my headache to begin to subside, which is what I was used to when I just took regular Tylenol. The next time I had a headache, I noticed the same thing. For me at least, the Rapid Release Tylenol didn't seem to offer any advantage over regular Tylenol.

When I think about it, it makes sense. Normal Tylenol is coated with gelatin, which pretty much instantly dissolves when it hits your stomach acid. Drilling a few small holes through that gelatin coating isn't going to make what is pretty much an instant process any faster. Tylenol knows that people want immediate headache relief which is what has allowed them to market this whole "Rapid Release" concept. In the end, though, the Rapid Release Gelcaps did not work any faster than regular Tylenol, and they normally cost more. Next time you have a headache, save yourself some money by sticking with regular Tylenol instead of the Rapid Release version. [62]

## THE SCIENCE BEHIND RAPID RELEASE TYLENOL® PRODUCTS DEMONSTRATES J&J'S MARKETING OF THE CLASS RAPID RELEASE GELCAPS IS FALSE, MISLEADING, AND/OR DECEPTIVE

61. Despite what J&J represents to the public about the Class Rapid Release Gelcaps, they do not work faster than other, cheaper Tylenol® products.

62. A 2018 study of the "rapid release" or "fast release" claims of acetaminophen products, including Tylenol® Extra Strength Rapid Release Gels,

---

[62] https://prawntail.com/do-tylenol-rapid-release-gelcaps-really-work-faster-than-regular-tylenol/ (last accessed 11.15.2018).

revealed that these products not only fail to work faster, they actually work *slower* than their traditional acetaminophen counterparts, such as tablets.[63]

63.    Thus, the science demonstrates that J&J's representations and advertising is false, misleading, deceptive, and unfair on its face.

64.    The level of deception and unfairness is elevated given that J&J has long known or should have known that there is scant or conflicting evidence about the correlation of the speed and efficacy of its acetaminophen products to its rapid release gelcap design.

65.    J&J knew or should have known of the existence of "contradictory claims for rapid or fast-release [acetaminophen] products."[64]

66.    There is no proven significant efficacy difference between J&J's Tylenol® rapid release gelcaps and its non-rapid release products to warrant J&J's representations that the Class Rapid Release Gelcaps work faster than the non-rapid release Tylenol® products.

67.    J&J knew or should have known that its representations about the Class Rapid Release Gelcaps were false, misleading, and/or deceptive. For example, J&J product testing, analysis, and/or research and development should have alerted J&J to the false, misleading, and/or deceptive nature of its representations pertaining to the Class Rapid Release Gelcaps. Moreover, J&J should have conducted studies or had a basis for the representations it made on and in its labeling, packaging, advertising, and other marketing.

68.    Despite that J&J knew or should have known that the Class Rapid Release Gelcaps did not work faster than its other products, J&J falsely marketed the Class Rapid Release Gelcaps as providing the same effective medicine as its other Tylenol® products, but *faster than ever before* in order to induce unwitting

---

[63] Kucera, Jessop, Alvarez, Gortler, Light, *supra* n.5.
[64] *Id.*

consumers to buy the Class Rapid Release Gelcaps for a premium price – a price that exceeded the actual value of the product.

## PLAINTIFF'S EXPERIENCE

### Plaintiff Eduardo Hernandez

69.     Plaintiff Hernandez purchased Tylenol® Extra Strength Rapid Release Gels, 290 count on or about May 1, 2018 at Sam's Club in Riverside, Riverside County, California for approximately $16.48 – a cost more than the brand's traditional acetaminophen products, like tablets or caplets, in the same count.

70.     This was not the first time he purchased the Class Rapid Release Gelcaps or other acetaminophen products, since he suffers and has suffered from knee pain for many years.

71.     He purchased the Class Rapid Release Gelcaps over other Tylenol® brand and other acetaminophen products solely or in part because they were advertised and labeled as "rapid release" offering "rapid relief" and he hoped for faster relief of pain.

72.     J&J's marketing (labeling and advertising) misled Plaintiff Hernandez to believe that the Class Rapid Release Gelcaps he purchased would provide faster relief than other cheaper Tylenol® acetaminophen products.

73.     Plaintiff Hernandez's experience was that the Class Rapid Release Gelcaps did not work faster for him than other, cheaper acetaminophen products.

74.     Had Plaintiff Hernandez known that the Class Rapid Release Gelcaps did not act any faster than traditional, cheaper Tylenol® products, he would not have been willing to pay the premium that he did for the Class Rapid Release Gelcaps. Instead, he would have purchased a cheaper, just as effective and just as fast acting acetaminophen product.

75.     The cost of the Class Rapid Release Gelcaps exceeded the value of the product and Plaintiff Hernandez did not receive the benefit of the bargain.

## CLASS ACTION ALLEGATIONS

76.     J&J's conduct violates the law. J&J violated consumer protection laws, breached warranties, and unjustly enriched itself to the detriment of consumers. J&J's conduct is ongoing and is the basis for Plaintiff's class action allegations.

77.     Plaintiff represents a proposed class of hundreds of thousands of consumers who purchased and used the Class Rapid Release Gelcaps manufactured and distributed by J&J and sold under the Tylenol® brand name.

78.     Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), against J&J, on his own and on behalf of the California Class defined below. Plaintiff proposes the California Class in the interest of judicial economy and efficiency.

**California Class:**
During the fullest period allowed by law, all persons who purchased the Class Rapid Release Gelcaps in the State of California.

79.     At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiff reserves the right to modify these class definitions.

80.     "Class Rapid Release Gelcaps" includes Tylenol® Extra Strength Rapid Release Gels, Tylenol® PM Rapid Release Gels, and any Tylenol® acetaminophen products labeled and/or marketed as "rapid release."

81.     Excluded from the proposed Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) J&J and any entity in which it has a controlling interest or which has a controlling interest in it; (c) the

officers and directors of J&J; (e) J&J's legal representatives, assigns, and successors; and (f) all persons who properly execute and file a timely request for exclusion from the Class.

82.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the California Class.

83.     **Numerosity**:  While the exact number of Class Members cannot yet be determined, the Class consists at a minimum of hundreds of people dispersed throughout the State of California, such that joinder of all members (the "Class Members") is impracticable. The exact number of Class Members can readily be determined by review of information maintained by J&J.

84.     **Commonality**:  Common questions of law and fact exist as to all members of the Class. Among the questions of law and fact common to the Class are:

    a.    Whether J&J knew, or reasonably should have known, that the Class Rapid Release Gelcaps it placed into the stream of commerce would not function as advertised;

    b.    Whether the advertised "rapid release" feature of the Class Rapid Release Gelcaps is a material fact that reasonable purchasers would have considered in deciding whether to purchase the Class Rapid Release Gelcaps;

    c.    Whether the Class Rapid Release Gelcaps are of the quality and character J&J promised to consumers;

    d.    Whether J&J breached express warranties relating to the Class Rapid Release Gelcaps;

CLASS ACTION COMPLAINT

e.     Whether J&J breached implied warranties relating to the Class Rapid Release Gelcaps;

f.     Whether J&J mispresented the characteristics, qualities, and capabilities of the Class Rapid Release Gelcaps;

g.     Whether J&J made fraudulent, false, deceptive, misleading and/or otherwise unfair and deceptive statements in connection with the sale of the Class Rapid Release Gelcaps on its labeling, in its advertising, and on its website, including those relating to speed and comparing the Class Rapid Release Gelcaps to other acetaminophen products not classified as "rapid release";

h.     Whether J&J engaged in unfair and deceptive trade practices pertaining to the Class Rapid Release Gelcaps;

i.     Whether J&J was unjustly enriched as a result of selling the Class Rapid Release Gelcaps;

j.     Whether J&J should be ordered to disgorge all or part of the profits it received from the sale of the Class Rapid Release Gelcaps;

k.     Whether Plaintiff and Class Members are entitled to damages including compensatory, exemplary, and statutory damages, and the amount of such damages;

l.     Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction and requiring that J&J engage in a corrective notice campaign and/or a recall of the Class Rapid Release Gelcaps to address misrepresentations and misleading statements on the packaging; and

m.     Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees and pre-judgment interest, post-judgment interest, and costs.

85.     **Typicality**:  Plaintiff has substantially the same interest in this matter as all other proposed Class Members and his claims arise out of the same set of facts and conduct as all other Class Members. Plaintiff and all Class Members purchased the Class Rapid Release Gelcaps. All of the claims of Plaintiff and Class Members arise out of J&J's false, misleading, deceptive, and unfair conduct. Common to

Plaintiff's and Class Members' claims is J&J's conduct in marketing, advertising, warranting, and/or selling the Class Rapid Release Gelcaps and Plaintiff's and Class Members' purchase of the Class Rapid Release Gelcaps.

86.    **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of Class Members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiff has no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

87.    The elements of Rule 23(b)(2) are met. J&J will continue to commit the violations alleged, Plaintiff, Class Members and the general public will be subject to and continue to suffer from the same or substantially similar deceitful marketing. J&J has acted on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

88.    The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only the individual Class Members and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against J&J, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiff. Plaintiff's counsel, highly

experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

89.    Any applicable statutes of limitations have been tolled by J&J's knowledge, actual misrepresentations, and/or denial of the facts as alleged herein.

90.    Alternatively, the facts alleged herein give rise to estoppel. J&J was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Rapid Release Gelcaps. At all relevant times and continuing to this day, J&J knowingly, affirmatively, and actively misrepresented the true character, quality, and nature of the Class Rapid Release Gelcaps. Plaintiff and Class Members reasonably relied on J&J's affirmative misrepresentations of material facts. Based on the allegations contained herein, J&J is estopped from prevailing on any statute of limitations defense in this action.

91.    Additionally, J&J is estopped from raising any defense of laches due to its own unclean hands.

## CLAIMS FOR RELIEF
## COUNT I
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW ("FAL") BUSINESS AND PROFESSIONAL CODE § 17500
### (Plaintiff Individually and on Behalf of the California Class)

92.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

93.    California Business & Professions Code § 17500 states:

> "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other

> publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

94.     California's FAL prohibits not only false advertising, but also advertising which is misleading, even if true, and advertising that has a capacity, likelihood, or tendency to deceive of confuse the public.

95.     J&J caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to J&J, to be untrue and misleading to consumers, including Plaintiff and the other Class Members.

96.     J&J has violated § 17500 because the misrepresentations and omissions regarding the speed and capability of its Class Rapid Release Gelcaps as set forth in this Complaint were material and likely to deceive a reasonable consumer.

97.     Plaintiff and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of J&J's unfair, unlawful, and/or deceptive practices. In purchasing their Class Rapid Release Gelcaps, Plaintiff and the other Class Members relied on the misrepresentations and/or omissions of J&J with respect to the speed and capability of the Class Rapid Release Gelcaps. J&J's representations were untrue because the Class Rapid Release Gelcaps were manufactured and sold with the same acetaminophen medicine used in its other Tylenol® products and the Class Rapid Release Gelcaps worked slower, rather than faster, than the other non-rapid release acetaminophen Tylenol® products. Had Plaintiff and the other Class Members known this, they would not have purchased their Class Rapid Release Gelcaps and/or paid as much for them. Accordingly,

Plaintiff and Class Members overpaid for their Class Rapid Release Gelcaps and did not receive the benefit of their bargain.

98.     All of the wrongful conduct alleged herein occurred in the course of J&J's business.

99.     Plaintiff, individually and on behalf of the other Class Members, requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and Class Members any money J&J acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief the Court deems necessary.

## COUNT II

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL") BUSINESS AND PROFESSIONAL CODE § 17200

### (Plaintiff individually and on behalf of California Class)

100.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

101.     The California UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

102.     J&J has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that the Class Rapid Release Gelcaps work slower than its other non-rapid release acetaminophen Tylenol® products. J&J should have disclosed this information or at least not misrepresented the Class Rapid Release Gelcaps as faster than its other products because that was untrue and J&J was in a superior position to know the true facts, and Plaintiff and Class Members could not reasonably be expected to learn or discover that true fact.

103.    These acts and practices have deceived Plaintiff and Class Members, and are likely to deceive the public. By misrepresenting the true quality and nature of the Class Rapid Release Gelcaps to Plaintiff and Class Members, J&J violated the UCL, and caused injuries to Plaintiff and Class Members. The misrepresentations and omissions by J&J pertained to information that was material to Plaintiff's and Class Members' purchase decisions, as it would be material to all reasonable consumers.

104.    The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition. The injuries that Plaintiff and the Class Members suffered should have reasonably been avoided.

105.    J&J's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313.

106.    Plaintiff and Class Members seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by J&J, obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and obtain all other relief allowed under California Business & Professions Code § 17200.

## COUNT III
## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")
## CALIFORNIA CIVIL CODE § 1761

### (Plaintiff individually and on behalf of the California Class)

107.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

CLASS ACTION COMPLAINT

108.    Plaintiff and Class Members are "consumers" within the meaning of California Civil Code § 1761(d). Plaintiff and Class Members purchased one or more Class Rapid Release Gelcaps.

109.    J&J is a "person" within the meaning of California Civil Code § 1761(c).

110.    In the course of J&J's business, J&J engaged in unfair and deceptive acts in violation of the CLRA by the practices described above. These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

111.    J&J's unfair or deceptive acts or practices occurred repeatedly in J&J's trade or business and were capable of deceiving a substantial portion of the purchasing public.

112.    J&J knew or should have known that the Class Rapid Release Gelcaps were not more effective or faster-acting than its other, cheaper non-acetaminophen Tylenol® products.

113.    J&J was under a duty to Plaintiff and the Class Members to disclose the true nature and quality of the Class Rapid Release Gelcaps because:

a.    J&J was in a superior position to know the true state of facts about the Class Rapid Release Gelcaps;

CLASS ACTION COMPLAINT

b.  Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Rapid Release Gelcaps did not conform to J&J's advertisements and representations;

c.  J&J knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the true quality and nature of the Class Rapid Release Gelcaps; and

d.  J&J failed to disclose the truth about the Class Rapid Release Gelcaps to Plaintiff and Class Members.

114.  In misrepresenting the speed and capability of the Class Rapid Release Gelcaps as well as failing to disclose the true quality and nature of the Class Rapid Release Gelcaps, J&J has misrepresented and/or concealed material facts and breached its duty not to do so.

115.  The facts misrepresented and/or not disclosed by J&J to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Rapid Release Gelcaps or pay a lesser price for the Class Rapid Release Gelcaps. Had Plaintiff and Class Members known this information, they would not have purchased the Class Rapid Release Gelcaps or would have paid less for them.

116.  Plaintiff will provide J&J with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and currently seeks injunctive relief. After the 30-day notice period expires, Plaintiff will amend this complaint to seek monetary damages under the CLRA.

117.  Plaintiff's and Class Members' injuries were proximately caused by J&J's unfair and deceptive business practices.

118.  Therefore, Plaintiff and Class Members are entitled to equitable relief under the CLRA.

CLASS ACTION COMPLAINT

**COUNT IV**

**VIOLATION OF THE SONG-BEVERLY CONSUMERWARRANTY ACT CAL. CIV. CODE § 1790 *et seq.***

**(Plaintiff individually and on behalf of the California Class)**

119.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

120.    The Class Rapid Release Gelcaps are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

121.    Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

122.    J&J is a "manufacturer," "distributor," or "retail seller" within the meaning of Cal. Civ. Code § 1791.

123.    The implied warranty of merchantability included with the sale of each Class Rapid Release Gelcap means that Defendant warranted that each Class Rapid Release Gelcap:

(a)    would pass without objection in trade under the description;

(b)    was fit for the ordinary purposes for which the Class Rapid Release Gelcaps would be used; and

(c)    conformed to the promises or affirmations of fact made about the Class Rapid Release Gelcaps.

124.    At a minimum, the Class Rapid Release Gelcaps do not conform to the promises or affirmations of fact made on the label or in the advertising and marketing of the product, in that the Class Rapid Release Gelcaps do not rapid release or provide rapid relief faster than cheaper, non-rapid release acetaminophen Tylenol® products.

125.    The Class Rapid Release Gelcaps are not adequately labeled.

126.    The labeling, packaging, advertising, and marketing pertaining to the Class Rapid Release Gelcaps is false, misleading, and/or deceptive.

127.     These misrepresentations by J&J have deprived Plaintiff and Class Members of the benefit of their bargains.

128.     The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

129.     As a direct and proximate result of J&J's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

130.     At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

131.     Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

132.     Plaintiff and Class Members are also entitled to all incidental and consequential damages resulting from J&J's conduct, as well as reasonable attorneys' fees and costs.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER UCC §2-314

### (Plaintiff individually and on behalf of the California Class)

133.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

134.     The implied warranty of merchantability included with the sale of each Class Rapid Release Gelcap means that J&J warranted that each Class Rapid Release Gelcap, *inter alia*:

    (a)     would pass without objection in trade under the description;

    (b)     was fit for the ordinary purposes for which the Class Rapid Release Gelcaps would be used;

    (c)     was adequately contained, packaged, and labeled; and

33

(d)     conformed to the promises or affirmations of fact made about the Class Rapid Release Gelcaps.

135.    At a minimum, the Class Rapid Release Gelcaps do not conform to the promises or affirmations of fact made on the label or in the advertising and marketing of the product, in that the Class Rapid Release Gelcaps do not provide rapid release or provide rapid relief faster than cheaper, non-rapid release acetaminophen J&J's Tylenol® products.

136.    The Class Rapid Release Gelcaps are not adequately labeled.

137.    The labeling, packaging, advertising, and marketing pertaining to the Class Rapid Release Gelcaps is false, misleading, and/or deceptive.

138.    These misrepresentations by J&J have deprived Plaintiff and Class Members of the benefit of their bargains.

139.    The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

140.    As a direct and proximate result of Walmart's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

141.    At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

142.    Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

143.    Plaintiff and Class Members are also entitled to all incidental and consequential damages resulting from J&J's conduct, as well as reasonable attorneys' fees and costs.

CLASS ACTION COMPLAINT

# COUNT VI

## BREACH OF EXPRESS WARRANTY UNDER UCC §2-313

### (Plaintiff individually and on behalf of the California Class)

144.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

145.   As described herein, J&J made statements, promises, affirmations about the Class Rapid Release Gelcaps as to the nature, quality, and capability of the goods that became part of the bargain between the parties to create an express warranty that the Class Rapid Release Gelcaps would in fact conform to those representations.

146.   J&J breached its express warranty when its Class Rapid Release Gelcaps did not conform to the representations and descriptions J&J made to consumers.

147.   Plaintiff and Class Members reasonably relied on J&J's misrepresentations.

148.   The misrepresentations by J&J have deprived Plaintiff and Class Members of the benefit of their bargains.

149.   The Class Rapid Release Gelcaps are worth less than what Plaintiff and Class Members paid for them.

150.   As a direct and proximate result of Walmart's conduct as described herein, Plaintiff and Class Members purchased goods at a premium price that are actually worth substantially less in value to consumers.

151.   At a minimum, Plaintiff and Class Members have been damaged by the overpayment for the Class Rapid Release Gelcaps.

152.   Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, the overpayment in value for their Class Rapid Release Gelcaps.

CLASS ACTION COMPLAINT

153.    Plaintiff and Class Members are also entitled to all incidental and consequential damages resulting from J&J's conduct, as well as reasonable attorneys' fees and costs.

154.    Plaintiff and Class Members have provided or will provide J&J notice of the alleged breach within a reasonable time after discovering the breach.

## COUNT VII

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA") 15 U.S.C. § 2301 *et seq.*

**(Plaintiff individually and on behalf of the California Class)**

155.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

156.    Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

157.    J&J is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301 (4)-(5).

158.    Class Rapid Release Gelcaps are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

159.    As detailed above, J&J breached its warranty obligations by, at least, failing to provide a product that conformed to the promises and affirmations J&J made about the Class Rapid Release Gelcaps.

160.    J&J's breach of warranty deprived Plaintiff and Class Members of the benefit of their bargain.

161.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

CLASS ACTION COMPLAINT

162.    J&J has been afforded reasonable opportunity to cure its breaches of warranty. Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members will send notice to J&J's principal place of business to provide it with reasonable opportunity to correct its business practice and cure its breaches of warranties under the MMWA.

163.    In addition, resorting to any sort of informal dispute settlement procedure or affording J&J another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as J&J has repeatedly mispresented the true quality and nature of the Class Rapid Release Gelcaps and has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford J&J a reasonable opportunity to cure its breach of warranty is excused and/or has been satisfied.

164.    As a direct and proximate result of J&J's warranty breach, Plaintiff and Class Members sustained damages and other losses to be determined at trial. J&J's conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT VIII
## UNJUST ENRICHMENT
### (Plaintiff individually and on behalf of the California Class)

165.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

166.    As described above, J&J sold the Class Rapid Release Gelcaps to Plaintiff and Class Members making false, misleading, and/or deceptive representations about the products' speed and capabilities as compared to J&J's cheaper, non-rapid release acetaminophen products.

CLASS ACTION COMPLAINT

167.    J&J unjustly charged and continues to charge Plaintiff and Class Members a premium to purchase the Class Rapid Release Gelcaps over the non-rapid release acetaminophen Tylenol® products.

168.    As a result of its false, misleading, unfair, and/or deceptive practices and omission about the true nature and quality about the Class Rapid Release Gelcaps, J&J obtained monies that rightfully belong to Plaintiff and Class Members.

169.    J&J appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without knowledge of the true quality and nature of the Class Rapid Release Gelcaps, paid a higher price for their than what they were worth.

170.    J&J also received monies for those Class Rapid Release Gelcaps that Plaintiff and Class Members would not have otherwise purchased had they known the true nature and quality of the products.

171.    J&J's retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

172.    Plaintiff and Class Members seek restitution from J&J and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by J&J from its wrongful conduct and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## COUNT IX
## DECLARATORY RELIEF
**(Plaintiff individually and on behalf of the California Class)**

173.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

174.    There is a controversy between J&J and Plaintiff and the other Class Members concerning the true nature, quality, and capability of the Class Rapid

Release Gelcaps and the false, misleading, unfair, and/or deceptive representations that J&J made about the same.

175.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

176.    Accordingly, Plaintiff and Class Members seek a declaration that the Class Rapid Release Gelcaps do not release, provide relief, or otherwise work faster than other, cheaper non-rapid release acetaminophen Tylenol® products.

177.    Additionally, Plaintiff and Class Members seek a declaration that as a result of J&J's false, misleading, unfair, and/or deceptive representations, consumers and Class Members did not and do not receive the benefit of their bargain.

178.    J&J designed, manufactured, produced, tested, inspected, marketed, advertised, labeled, packaged, distributed, and sold the Class Rapid Release Gelcaps. J&J continues to do so while using false, misleading, unfair, and/or deceptive representations to ensure sales to consumers.

179.    Based upon information and belief, J&J has taken no corrective action concerning the false, misleading, unfair, and/or deceptive representations described herein, and has not issued any recalls, warnings, or notices concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps.

180.    Plaintiff and Class Members have suffered damages or injuries due to J&J's conduct described herein.

181.    J&J should be required to take corrective action to prevent further injuries, including:  (a) issuing a nationwide recall of the Class Rapid Release Gelcaps to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps; and (c) immediately discontinuing

CLASS ACTION COMPLAINT

any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ask the Court to enter judgment awarding the following relief:

A.   An order certifying the proposed California Class;

B.   An order awarding Plaintiff and Class Members their actual damages, punitive damages, and/or any other monetary relief provided by law;

C.   An order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.   An order requiring J&J to adequately represent the true nature, quality, and capability of the Class Rapid Release Gelcaps;

E.   An order (a) issuing a nationwide recall of the Class Rapid Release Gelcaps to address product labeling and packaging; (b) issuing warnings and/or notices to consumers and the Class concerning the true nature, quality, and capability of the Class Rapid Release Gelcaps; and (c) immediately discontinuing any false, misleading, unfair, and/or deceptive advertising, marketing, or other representations described herein.

F.   An order granting declaratory and/or injunctive relief as allowable under state and federal law;

G.   An order awarding Plaintiff and Class Members pre-judgment and post-judgment interest as allowed by law;

H.   An order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

I.   An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demand a trial by jury on all issues

CLASS ACTION COMPLAINT

so triable under the law.

DATED:  November 15, 2018    Respectfully submitted,

*/s/ Crystal Foley* __
Crystal Foley (SBN 224627)
**SIMMONS HANLY CONROY**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
Facsimile:  (310) 322-3655
cfoley@simmonsfirm.com

Mitchell M. Breit (*pro hac vice*
forthcoming)
**SIMMONS HANLY CONROY**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
mbreit@simmonsfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2018, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/Crystal Foley